# NO. 12-16-00166-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *AMOCO FEDERAL CREDIT UNION,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *OPINION*

Amoco Federal Credit Union asserts in this original mandamus proceeding that the 122nd Judicial District Court of Galveston County, Texas, has dominant jurisdiction to determine the issues raised in two rival declaratory judgment actions. The actions pertain to Amoco's disposition of $566,585.86 from the account of Michael Burgett. Amoco seeks a writ of mandamus directing the trial court to (1) vacate its June 10, 2016 temporary restraining order and (2) stay the declaratory judgment action filed by Michael Burgett, Lynda Burgett, and Marylou Kusmanoff (the real parties).[1] We conditionally grant the writ.

## BACKGROUND

Eighty-four-year-old Marylou Kusmanoff's husband of thirty-six years, Sam, died in February 2012. Sometime after Sam died, a dispute arose between Marylou's adult children, Michael Burgett and Carol Easterley, over the money Marylou had inherited from Sam (their stepfather). In March 2015, Marylou moved from a nursing home in Belleville, Illinois, to live near Michael and his wife, Lynda, in Broaddus, San Augustine County, Texas. The following month, Carol initiated guardianship proceedings in St. Clair County, Illinois, requesting appointment as Marylou's guardian. The Illinois court issued a restraining order on April 24,

---

[1] The respondent is the Honorable Charles R. Mitchell, Judge of the 273rd Judicial District Court, San Augustine County, Texas.

2015, prohibiting Amoco and its agent in Illinois from releasing any monies from Michael's Amoco account.

A hearing in the Illinois guardianship proceeding was held on December 2 and 3, 2015. Michael and Lynda appeared at the December hearing in person and were represented by an attorney. Marylou appeared in person and was represented by a different attorney. After the December 3 hearing, the guardianship proceeding was continued to March 1, 2016. However, Marylou, Michael, and Lynda did not appear at the March 1 hearing.

Rather, on February 26, 2016, Lynda filed an application to establish a guardianship for Marylou in the San Augustine County Court. She also filed an ex parte application for a temporary restraining order prohibiting Amoco from disbursing or distributing any funds from Michael's Amoco account. On March 4, 2016, the Illinois court rendered an order appointing Carol as Marylou's guardian. The day before the appointment, the Illinois court issued a mandatory injunction order that stated as follows:

> AMOCO FEDERAL CREDIT UNION as princip[al] and GATEWAY METRO CREDIT UNOIN [sic] as agent is ordered to deliver the funds remaining in Amoco Account no. 294930 immediately to attorney Gregory Skinner, Guardian ad litem for MARYLOU KUSMANOFF by end of business this date, March 3, 2016 at 5:00 p.m. Said delivery is to be accomplished by wire transfer to the IOLTA Attorney Trust Account of Gregory Skinner. Attorney Gregory Skinner is ordered to provide his account information to Robert Carter the attorney for AMOCO FEDERAL CREDIT UNION herein immediately.

Amoco complied with the order at 9:10 a.m. on March 4, 2016. At 9:30 a.m. on the same date, the 273rd Judicial District Court of San Augustine County (the San Augustine court) issued an ex parte "temporary order" restraining Amoco from transferring the funds in Michael Burgett's Amoco account.

On March 17, 2016, the San Augustine court conducted a hearing on Lynda's guardianship application. At the hearing, the court informed the parties that the guardianship had been transferred from the San Augustine County Court. Marylou's newly appointed guardian ad litem in Texas told the court that "[t]here was an order entered by the [Illinois] Court up there for guardianship, Judge. Now, we're requesting that this court take jurisdiction." During the hearing that ensued, Lynda's attorney informed the court that one of the reasons for obtaining the guardianship was to "start the process where the guardian, Mrs. Burgett, can start obtaining some of the monies back . . . ." He further added, "I'm hoping today that she will take the order, go to

2

the bank in Illinois, and say we now have a lawful order and they will be as gracious in removing that money from that account as swiftly and effectively as [Amoco] was sending it up there."

At Lynda's request during the hearing, the court appointed her as Marylou's temporary guardian rather than as her permanent guardian. After the appointment, the judge asked Amoco's attorney why Amoco had disbursed the $566,586.86 to Marylou's guardian ad litem in Illinois without domesticating the Illinois order in Texas. Amoco's attorney responded that "we were under the jurisdiction of the court as part of the final adjudication in Illinois. We were ordered to transfer the monies that were in an account in the name of Mr. Michael Burgett to the Guardian Ad Litem of Mrs. [Marylou] Kusmanoff in Illinois." The judge responded, "[W]ell, if that's the case, it comes down to a question of whether [Amoco] has a right to dispose of property pursuant to a foreign judgment that hasn't been registered or domesticated in the State of Texas. And, I'd just be interested in knowing that."

On April 6, Amoco filed a declaratory judgment action in the 122nd Judicial District Court of Galveston County (the Galveston court) against Michael and Lynda asking the court to declare that Amoco had not breached its member agreement with Michael or committed any other violation of law in instituting the freeze of Michael's account and the transfer of funds pursuant to the Illinois court order. Amoco alleged that its declaratory judgment action was in response to Michael and Lynda's contention in the San Augustine court on March 17 that it should not have transferred the $566,585.86 in Michael's account before the Illinois mandatory injunction order was domesticated in Texas. Amoco filed its declaratory judgment action in Galveston County based on the venue clause in its membership agreement with Michael, which provided that "any legal action regarding this Agreement shall be brought in the county in which the Credit Union is located."

The real parties responded to Amoco's declaratory judgment action with one of their own filed in the San Augustine court on May 9. The real parties based their suit on Amoco's failure to domesticate the Illinois mandatory injunction order before transferring the $566,585.86 to Marylou's Illinois guardian ad litem. They further alleged various tort causes of action against Amoco for failing to domesticate the Illinois order.

On May 31, Amoco filed an application for an anti-suit injunction in the Galveston court. The real parties followed on June 6 with their own application for an anti-suit injunction in the

3

San Augustine court. On June 9, the Galveston court issued a temporary restraining order, which stated in part as follows:

> It is THEREFORE ORDERED that Michael Burgett, Lynda Burgett, and Marylou Kusmanoff and any person acting on their behalf (including, but not limited to, Paul Anderson and Johnny Weismuller Jr.) (collectively, "Defendants") are commanded to desist and refrain from taking any further action in Cause No. CV-16-09656 pending in the 273rd Judicial District Court, San Augustine County, Texas[.]

The following day, the San Augustine court reciprocated with a temporary restraining order that included the following paragraph:

> It is therefore ORDERED that Amoco Federal Credit Union and any person action [sic] on their behalf (including but not limited to Chevazz Brown, Marie Delahoussaye, or Jackson Walker L.L.P) (Collectively the "Defendant") are commanded to desist and refrain from taking any further action in Cause Number 16-CV-0311 pending in the 122nd Judicial District Court, Galveston County, Texas[.]

As part of its temporary restraining order, the San Augustine court scheduled a temporary injunction hearing for June 15. The Galveston court had set its temporary injunction hearing for June 21.

Amoco filed a petition of writ of mandamus in this Court June 13. At the same time, it filed a motion for emergency relief requesting a stay of the proceeding in the San Augustine court pending our disposition of its mandamus petition. The motion was granted.

### AVAILABILITY OF MANDAMUS

Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am*., 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). The trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Therefore, a trial court abuses its discretion by failing to analyze or apply the law correctly. *Id*. As the party seeking relief, the relator bears the burden of demonstrating entitlement to mandamus relief. *Id*. at 837. When a court issues an "order which actively interferes with the exercise of jurisdiction" by a court possessing dominant jurisdiction,

4

mandamus relief is appropriate. ***In re Puig***, 351 S.W.3d 301, 306 (Tex. 2011) (orig. proceeding) (citing ***Abor v. Black***, 695 S.W.2d 564, 567 (Tex. 1985)).

## EXCLUSIVE JURISDICTION

The real parties assert that Amoco mischaracterizes the issue before us as one of dominant jurisdiction. They contend that the "base case" is a guardianship proceeding filed in the San Augustine County Court[2] on February 26, 2016. They argue that dominant jurisdiction is inapplicable because the San Augustine County Court is a statutory probate court and therefore has exclusive jurisdiction over guardianship proceedings and all related matters. They conclude that the claim Amoco alleges in its declaratory judgment action is incident to Marylou's guardianship and estate and therefore the Galveston court has no jurisdiction of Amoco's declaratory judgment action. This is so, the real parties claim, whether Amoco's suit was filed before the real parties' declaratory judgment action or not.

### Jurisdiction–Guardianship Proceedings

In a county in which there is a statutory probate court, that court has exclusive jurisdiction of all guardianship proceedings. TEX. EST. CODE ANN. § 1022.005(a) (West 2014). The term "statutory probate court" is defined as a court created by statute and designated as a statutory probate court under Chapter 25 of the Texas Government Code. ***Id***. § 1002.008(b) (West 2014). The San Augustine County Court is a constitutional county court, not a statutory court. *See* TEX. CONST. art. XVI, § 16; TEX. GOV'T CODE ANN. § 26.303 (West 2004).

San Augustine County has no statutory probate court. ***In re Burns***, No. 12-09-00261-CV, 2010 WL 2982917, at *2 (Tex. App.—Tyler 2010, orig. proceeding) (mem. op.). Consequently, the San Augustine County Court has original jurisdiction of guardianship proceedings. *See* TEX. EST. CODE ANN. § 1022.002(a) (West 2014). However, that court does not have exclusive jurisdiction of matters related to guardianship proceedings. *See* ***id***.; *cf.* ***id***. § 1022.005(a) (West 2014) (providing that statutory probate court has exclusive jurisdiction of

---

[2] The real parties mistakenly refer to the County Court as the "County Court at Law." We take judicial notice that San Augustine County does not have a court at law. *See* ***Jeter v. McGraw***, 218 S.W.3d 850, 853 (Tex. App.–Beaumont 2007, pet. denied) (taking judicial notice of which courts exist in Jasper County).

all guardianships, both contested and uncontested, and most causes of action related to guardianship proceeding must be brought in statutory probate court).

Texas district courts have jurisdiction over claims for declaratory relief. *See* TEX. GOV'T CODE ANN. § 24.008 (West 2004); *Occidental Chem. Corp. v. ETC NGL Transport, LLC*, 425 S.W.3d 354, 359 (Tex. App.–Houston [1st Dist.] 2011, pet. dism'd). Therefore, the Galveston court acquired jurisdiction of Amoco's declaratory judgment action, even if it is a matter related to a guardianship proceeding, because there is no court of exclusive jurisdiction. *See* TEX. EST. CODE ANN. § 1022.002. Accordingly, we agree with Amoco that the question here is one of dominant jurisdiction. *See In re Puig*, 351 S.W.3d at 305.

### DOMINANT JURISDICTION

Amoco contends that the Galveston court has dominant jurisdiction because Amoco's declaratory judgment action was filed before the real parties filed their own declaratory judgment action in the San Augustine court. Therefore, they argue that the San Augustine court abused its discretion by (1) issuing the June 10, 2016 temporary restraining order, (2) scheduling a temporary injunction hearing for June 15, 2016, and (3) permitting the real parties to take action in the San Augustine court notwithstanding the existence of the Galveston court's temporary restraining order prohibiting them from doing so.

**<u>Court of Dominant Jurisdiction</u>**

Generally, when cases involving the same subject matter are brought in courts of coordinate jurisdiction, the court with the first-filed case has dominant jurisdiction and should proceed, and the other cases should abate. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001); *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding). As long as the forum is a proper one, it is the plaintiff's privilege to choose the forum. *Wyatt v. Shaw Plumbing Co*., 760 S.W.2d 245, 248 (Tex. 1988). "Defendants are simply not at liberty to decline to do battle in the forum chosen by the plaintiff." *Id*.

Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. *Perry*, 66 S.W.3d at 252. The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, its action must necessarily be exclusive because it is impossible that two courts can, at the same time, possess the power to make a final determination of the

6

same controversy between the same parties.  *Id*.  A court that acquires dominant jurisdiction is entitled to protect its jurisdiction by enjoining the parties from proceeding in a suit subsequently filed in another court of this state.  *Id*.

The real parties do not dispute that Amoco's declaratory judgment action was filed before their corresponding action.  In its second amended petition, Amoco alleged that venue was proper in Galveston County because of the venue provision in the membership agreement Michael signed and because "all or a substantial part of the events or omissions giving rise to the claim occurred in Galveston County."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (West 2002).  It is undisputed that the transfer of funds from Michael's Amoco account occurred in Galveston County.  Therefore, Galveston County is a proper forum, and the Galveston County court acquired dominant jurisdiction of the case.

### THE REAL PARTIES' REMAINING ARGUMENTS

The real parties argue that the San Augustine court, and not the Galveston court, has dominant jurisdiction.  They also assert that Amoco has waived dominant jurisdiction.

## Controlling Issue Test

The real parties point out that the San Augustine County guardianship was filed before Amoco's declaratory judgment action.  They argue that Amoco seeks declaratory relief to resolve a matter related to Marylou's guardianship because the dispute pertains to the settlement, partition, and distribution of her estate.  They contend that the San Augustine County Court acquired dominant jurisdiction over this issue when the guardianship was filed and implicitly assert that, as a result of the guardianship's transfer, the San Augustine court has dominant jurisdiction.

A court exercising original probate jurisdiction in a guardianship proceeding has jurisdiction of all matters related to the guardianship proceeding as specified in Section 1021.001 for that type of court.  TEX. EST. CODE ANN. § 1022.001(a) (West 2014).  By statute, a matter related to a guardianship proceeding includes the settling of an account of a guardian and all other matters relating to the settlement, partition, or distribution of a ward's estate.  *See id*. § 1021.001(a)(2) (West 2014).  Therefore, a cause of action is related to a guardianship proceeding if the controlling issue in the suit is the settlement, partition, and distribution of a ward's estate.  *See In re Graham*, 971 S.W.2d 56, 58 (Tex. 1998) (orig. proceeding) (applying

7

prior statute defining "appertaining to or incident to an estate" to include "generally all matters relating to the settlement, partition, and distribution of a guardianship estate"); *see also* TEX. EST. CODE ANN. § 1021.001(a)(2). To identify the controlling issue in a suit, we look to the pleadings. *In re Graham*, 971 S.W.2d at 58.

In this case, Amoco alleged in its declaratory judgment action that (1) an Illinois court appointed Carol as Marylou's guardian and directed Amoco to transfer the balance remaining in Michael's Amoco account to Marylou's Illinois guardian ad litem; (2) the account from which the funds were to be transferred was in Michael's name only; (3) Amoco complied with the Illinois court's order; (4) less than one hour later, the San Augustine court issued a temporary restraining order enjoining Amoco from transferring the funds; (5) Michael and Lynda argued to the San Augustine court that Amoco should not have transferred the funds before it domesticated the Illinois order directing it to transfer the funds; and (6) they indicated that they intended to bring suit against Amoco because it transferred the funds.

Based on our review of Amoco's pleadings, we conclude that the controlling issue in Amoco's declaratory judgment action is whether Amoco had to domesticate the Illinois order before it transferred the $566,585.86 from Michael's account to Marylou's Illinois guardian ad litem. The controlling issue does not involve the settlement, partition, or distribution of Marylou's estate in the San Augustine guardianship proceeding.

## Waiver

The real parties contend, in the alternative, that Amoco has waived dominant jurisdiction. Waiver is the intentional relinquishment of a known right made expressly or indicated by conduct that is inconsistent with an intent to claim the right. *In re Hicks*, 252 S.W.3d 790, 795 (Tex. App.—Houston [14th Dist.] 2008) (orig. proceeding [mandamus denied]). Dominant jurisdiction can be waived. *King v. Deutsche Bank Nat'l Trust Co*., 472 S.W.3d 848, 853 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

The real parties first argue that Amoco waived dominant jurisdiction because it appeared by its attorney in the San Augustine guardianship proceeding on March 17 and June 10, 2016. The record reflects that, on March 4, 2016, the court issued its ex parte "temporary order" restraining Amoco from transferring funds from Michael's account. However, Amoco had already transferred the funds. Thereafter, the court ordered Amoco to provide certain information about the transfer of funds from Michael's account. In Amoco's written response, it

8

identified Amoco's President and Chief Executive Officer, Sean Bailey, as the person who authorized the transfer. The real parties subpoenaed Bailey for the March 17 hearing, and Amoco sought a protective order from the Galveston court. Amoco's attorney attended the hearing instead of Bailey.

Amoco was not a party to the guardianship and did not file its declaratory judgment action against the real parties until April 6. From the outset of the March 17 hearing, Amoco's attorney expressed to the court that he was there only to answer any additional questions the court might have about the transfer of funds from Michael's account. He explained to the court that Amoco was not taking any position in the guardianship proceeding that day, and he did not participate in the hearing on matters related to the guardianship.

After appointing the temporary guardian, the court interrogated Amoco's attorney about why Amoco transferred the funds from Michael's account to Marylou's guardian ad litem in Illinois on March 4. Amoco's attorney answered the court's questions. The real parties had not requested any further relief relating to the transfer of funds, and the court took no action on the issue. The real parties withdrew their subpoena for Bailey. We see nothing in the record that shows Amoco intended to waive dominant jurisdiction by attending the hearing to provide information to the court following the issuance of the real parties' subpoena for Bailey. *See **In re Hicks***, 252 S.W.3d at 795.

At the June 10 hearing, the trial court considered the real parties' application for a temporary restraining order to prohibit Amoco from proceeding in its declaratory judgment action. Amoco appeared and argued that the hearing should not go forward because the Galveston court had issued a temporary restraining order prohibiting the real parties from proceeding in the San Augustine court. Amoco expressly stated that its appearance was "subject to and without waiving [AMOCO's] right to object to venue, or to assert a plea of some kind when the time is appropriate." The doctrine of dominant jurisdiction pertains to venue, not jurisdiction. ***Gordon v. Jones***, 196 S.W.3d 376, 384 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Therefore, Amoco's statement is sufficient to avoid waiver. *See **In re Sims***, 88 S.W.3d 297, 304-05 (Tex. App.–San Antonio 2002, orig. proceeding).

Finally, the real parties contend that Amoco waived dominant jurisdiction because it did not file a plea in abatement or motion to transfer in response to their declaratory judgment action. But they fail to note that Amoco was not served with citation in the real parties' declaratory

judgment action until June 7. They were not required to file responsive pleadings until July 5. Mandamus is available even before required pleadings can be filed when one court is interfering with another court's jurisdiction. *See* ***In re Puig***, 351 S.W.3d at 306.

We hold that Amoco has not waived dominant jurisdiction.

## ANTI-SUIT INJUNCTION

When a party files suit in a court of competent jurisdiction, that court acquires dominant jurisdiction, entitling it to proceed to judgment and to protect its jurisdiction by enjoining the parties from proceeding in a suit subsequently filed in another court of this state. ***In re Henry***, 274 S.W.3d 185, 192 (Tex. App.—Houston [1st Dist.] 2008, pet. denied [mandamus denied]) (combined interlocutory appeal and original proceeding). An anti-suit inunction is appropriate in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important policies; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. ***Golden Rule Ins. Co. v. Harper***, 925 S.W.2d 649, 651 (Tex. 1996).

The Galveston court issued a temporary restraining order to protect its jurisdiction of Amoco's declaratory judgment action. The San Augustine court responded by issuing its own temporary restraining order prohibiting Amoco from proceeding in the Galveston court. In addition, the San Augustine court scheduled a temporary injunction hearing for six days before the date the Galveston court set for its temporary injunction hearing.

The San Augustine court had the opportunity to abate its proceeding in deference to the Galveston court. At the June 10 hearing before the San Augustine court, it was established that (1) the Galveston County declaratory judgment action was commenced first; (2) the Galveston County declaratory judgment action is still pending; (3) the Galveston County declaratory judgment action included all of the parties; and (4) the underlying facts for the declaratory judgment actions in the two counties are the same and the Galveston County suit can be amended to include any claims the real parties wish to add. *See* ***In re ExxonMobil Prod. Co.***, 340 S.W.3d 852, 856 (Tex. App.—San Antonio 2011) (orig. proceeding). Once these elements were established, the San Augustine court was required to abate the proceeding before it. Therefore, it abused its discretion when it failed to do so, and signed its June 10, 2016 temporary order restraining Amoco from proceeding in the Galveston County action and setting a temporary injunction hearing.

10

Because the 273rd Judicial District Court of San Augustine County abused its discretion in issuing its June 10, 2016 temporary restraining order, we ***conditionally grant*** the petition for writ of mandamus. We direct that court to (1) vacate its June 10, 2016 temporary restraining order, and (2) issue an order abating the real parties' declaratory judgment action filed May 9, 2016, in Cause No. CV-16-09656, ***In the Matter of Marylou Kusmanoff***. The writ will issue only if the trial court fails to comply ***within ten (10) days*** of the date of this opinion and order. The 273rd Judicial District Court shall forward to this Court, within the time for compliance with this opinion and order, a certified copy of its order evidencing such compliance. This Court's June 14, 2016 stay is lifted.

<u>JAMES T. WORTHEN</u>
Chief Justice

Opinion delivered October 31, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

11

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

## ORDER

### OCTOBER 31, 2016

### NO. 12-16-00166-CV

**AMOCO FEDERAL CREDIT UNION,**
Relator
V.

**HON. CHARLES R. MITCHELL,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by **AMOCO FEDERAL CREDIT UNION**; who is the relator in Cause No. CV-16-09656, pending on the docket of the 273rd District Court Judicial District Court of San Augustine, Texas. Said petition for writ of mandamus having been filed herein on June 13, 2016, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, conditionally granted.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate its June 10, 2016 temporary restraining order and issue an order abating the declaratory judgment action filed by the real parties in interest, **MARYLOU KUSMANOFF, LYNDA BURGETT, and MICHAEL BURGETT**, the writ will not issue unless the **HONORABLE CHARLES R. MITCHELL** fails to comply with this Court order *within ten (10)* days from the date of this order.

It is further ORDERED that the real parties in interest, **MARYLOU KUSMANOFF, LYNDA BURGETT and MICHAEL BURGETT**, pay all costs, incurred by reason of this proceeding.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*